## M.J.C. *vs.* D.J. & another.[1]

Hampden. March 7, 1991. - June 11, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ

*Paternity. Legitimacy. Practice, Civil*, Standing.

An action brought by a putative father pursuant to G. L. c. 215, § 6, to establish his paternity of a child whose mother was at the time of conception and birth, and remained, married to another, was properly dismissed, where the record supported the judge's finding that the plaintiff failed to demonstrate, as a preliminary matter, his establishment of a substantial parent-child relationship during the time when he had had the opportunity to do so. [394-395]

CIVIL ACTION commenced in the Hampden Division of the Probate and Family Court Department on January 23, 1990.

The case was heard by *Joseph E. Rodgers*, J., on a motion to dismiss.

The Supreme Judicial Court granted a request for direct appellate review.

*Bruce D. Clarkin* for the plaintiff.

*Patricia A. Bobba* for the defendants.

LYNCH, J. In this case the plaintiff, alleging he is the father of a certain child whose mother is, and was at the time of the child's conception and birth, married to another man, appeals the dismissal of his action to establish paternity. The plaintiff claims the mother prevented him from forming a substantial parent-child relationship with the child, and therefore he ought not to be required to demonstrate such a relationship as a prerequisite to bringing such an action.

In January, 1990, the putative father filed a "complaint in equity" pursuant to G. L. c. 215, § 6 (1988 ed.), against the

---

[1]The spouse of D.J.

mother and her husband, seeking an adjudication of the child's paternity. The defendants moved to dismiss the complaint for lack of standing. Before the probate judge ruled on the motion, this court decided the case of *C.C.* v. *A.B.*, 406 Mass. 679 (1990).[2] After a preliminary hearing pursuant to our decision in that case, the probate judge dismissed the complaint because he found the plaintiff had not formed a substantial relationship with the child. The plaintiff appealed, and we allowed his application for direct appellate review. We now affirm the order dismissing the plaintiff's complaint.

We repeat the relevant facts from the findings of the probate judge. The defendants, the mother and her husband, were married in May, 1986. The plaintiff is married and is the father of three children. The mother was employed as the plaintiff's secretary from May, 1986, until June, 1988. Beginning in the spring of 1988, the defendants made an effort to conceive a child. The mother was aware that the most favorable time for her to become pregnant in June, 1988, would be the third week of the month. On June 15, 1988, the mother and her husband had sexual relations. On June 16, 1988, the mother and the plaintiff had sexual relations. On June 17, 1988, the mother and her husband again had sexual relations.

By the end of July, 1988, the mother knew she was pregnant. She questioned whether the plaintiff or her husband was the father, since the child had been conceived sometime between the fifteenth and seventeenth of June. In August, 1988, the plaintiff told the mother that, if the baby was his, he would take care of her and the baby. The mother indicated that she preferred to allow her husband to assume that he was the father of the child, and the plaintiff went along with this plan. On March 14, 1989, the mother gave birth to a baby boy. The child bears the last name of the husband,

---

[2]In that case we extended greater protection to the interest of a putative father in establishing his paternity of a child conceived and born while the mother was married to another man, but only in certain circumstances discussed below.

and the birth certificate lists the husband as the father of the child.

Beginning at the end of March, 1989, approximately two weeks after the birth of the child, and continuing through the end of July, 1989, the plaintiff visited the defendants' home approximately two or three times a week. All the plaintiff's visits took place in the afternoon while the husband was at work.

The visits lasted, on the average, ninety minutes. During all of the visits the plaintiff and the mother engaged in kissing and hugging. The plaintiff generally wanted to go beyond the kissing and hugging stage, but, although he and the mother engaged in sexual relations after the birth of the child, none of these relations took place in the defendants' home.

During April and May, the baby slept in the living room and was always in that room when the plaintiff visited. During June and July, the baby slept in a bedroom on the second floor of the defendants' home. During some of the plaintiff's visits in June and July, the baby remained asleep upstairs during the entire visit. On those occasions, the plaintiff did not go upstairs to visit the baby, nor did he ask to see the baby; he would visit with the mother and leave without having seen the baby.

The plaintiff never changed the baby's diaper nor did he feed the baby. The mother visited the plaintiff's office with the baby on a few occasions to see the secretaries with whom she was friendly. During these visits, the plaintiff and some of his coworkers held the baby from time to time.

During her pregnancy and after the birth of the child, the defendants were having financial difficulties. Following the child's birth, the plaintiff gave money to the mother and paid some of her bills directly to her creditors. These payments totalled between $5,000 and $6,000. The plaintiff maintained that this money was to assist both the baby and the mother. The plaintiff also discussed the possibility of the mother working for him in the future. Although aware that the plaintiff was assisting the family, the husband was not fully

aware of the amount or circumstances of this financial assis-
tance. The mother allowed her husband to believe that the
plaintiff was lending money to the family which would be
paid back when the mother resumed working. The mother
sometimes told the plaintiff that she wanted to repay this
money, but the plaintiff had consistently insisted that he was
not interested in repayment.

In August, 1989, the mother told the plaintiff that their
romantic relationship must end. The plaintiff expressed an
interest in continuing to visit the defendants' home to see
both the baby and the mother. The mother refused to allow
the plaintiff to enter her home. During August and Septem-
ber, the plaintiff continued to ask the mother for permission
to visit the defendants' home. In August, the plaintiff pur-
chased a life insurance policy on his life naming his brother
as beneficiary, and told his brother that the proceeds were to
be used for the benefit of the mother and the child in the
event of the plaintiff's death. In October, 1989, the mother
confessed to her husband the romantic relationship with the
plaintiff, and the plaintiff confessed the relationship to his
wife.

From the birth of the child through the October, 1989,
confession, the husband had assumed that only he could be
the father of the child. During this time the husband had fed
the baby, changed his diaper many times, held and com-
forted him, and otherwise assumed the role of the child's fa-
ther. The plaintiff was aware that the husband was fulfilling
the role of the child's father, and allowed the husband to
continue to assume he was the father. The husband has never
denied that he is the father of the child. He and the mother
have lived together continuously as a family unit since the
day of their marriage. The defendants' marriage had sur-
vived the confession of the mother's relationship with the
plaintiff, the defendants had remained together, and the hus-
band continued to maintain his parent-child relationship with
the child.

Despite the plaintiff's consistent expression of interest in
the well-being of the child and in visiting the child, and his

willingness to support the child, there was no evidence of any emotional bond between the child and the plaintiff. The primary activity conducted by the plaintiff during each visit to the defendants' home was the customary hugging and kissing between himself and the mother, and the plaintiff's primary motive for the paternity action is or was his love for the mother. The judge concluded, among other things, that "the plaintiff has developed no relationship with this child," and that the plaintiff's giving of economic support, while commendable, was in some measure tied in with his feelings for the mother.

In *C.C.* v. *A.B.*, 406 Mass. 679, 686-687 (1990)., we held that a putative father can prevail in an equity action to establish his paternity of a certain child, when the mother of the child was married to another man at the time of the child's conception and birth, if he can prove his paternity by clear and convincing evidence. We also held, however, that a person alleging himself to be the father of a child born to a married woman is not entitled to produce evidence of paternity unless he can first show by clear and convincing evidence that he has a substantial parent-child relationship with the child. *Id.* at 689-691. We noted that a determination of the extent of the relationship is not only relevant in deciding whether the putative father's interest in contact with the child is of constitutional proportions, and in deciding the best interests of the child, but it also protects any extant marital relationship on which the plaintiff's action will intrude. Where the putative father can come forward with clear and convincing evidence of a substantial parent-child relationship, the interest in protecting a family, which by necessary implication has already suffered substantial interference, is greatly decreased. On the other hand, where the putative father cannot make such a showing, the family will be protected against the significant intrusion of a full-fledged paternity action. *Id.* at 691. We left open the question of "what rights a putative father might have in a case where, due to the actions of the mother, he had not yet formed a substantial relationship with the child." *Id.* at 690 n.10.

The plaintiff does not dispute the probate judge's finding that he formed no substantial relationship with the child. He claims, however, that his situation presents the question we left open in note 10 of *C.C.* v. *A.B.* Focusing on language of the judge in his conclusions of law that "no emotional bonding between the child and the plaintiff has had *an opportunity* to occur" (emphasis added), the plaintiff claims that there was no opportunity for bonding to occur because the mother prevented him from seeing the child after August, 1989, when the child was only four and one-half months old. The plaintiff argues that it would be impossible for any putative father to prove that he had formed a substantial relationship with such a young baby. Therefore, he claims, a putative father should not be required to meet the prerequisite of showing a substantial relationship where the mother denied visitation rights while the child was still an infant.

We do not agree that the circumstances of this case present the question left open in note 10 of *C.C* v. *A.B.* This is not a case where the putative father was prevented from developing a parent-child relationship primarily by the mother's actions. Rather, the probate judge found that the plaintiff did not seek a substantial parent-child relationship with the child during the four and one-half months when he had an opportunity to do so.[3] We reject the contention, at least in this case, that four and one-half months was not sufficient time for the plaintiff to develop more of a relationship. The judge's finding that the plaintiff has been motivated, from the birth of the child through his pursuance of the instant action, more by his interest in the mother than in the child, is based on an assessment of credibility which we must

---

[3] That the plaintiff may have delayed pressing for a closer relationship with the child because he was waiting to see how his relationship with the mother would develop, and in the meantime was acquiescing in her wishes to keep their relationship a secret, does not excuse him from making the preliminary showing. On the contrary, it is a perfect example of the type of situation contemplated by *C.C.* v. *A.B.*, in which the putative father's interest is not strong enough to warrant protection, and the family unit has not already been weakened enough to warrant intrusion.

accept unless it is clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). See *Farrell* v. *Branconmier*, 337 Mass. 366, 367 (1958).[4] Because the record supports the judge's finding that the plaintiff failed to establish a substantial relationship with the child, as well as his implicit finding that the mother's actions were not the sole or primary cause of this failure, we affirm the order of the probate judge dismissing the plaintiff's paternity action.

*So ordered.*

---

[4]The Massachusetts Rules of Civil Procedure govern actions under G. L. c. 215, § 6, pursuant to the express language of that statute.