R. J. A. *vs.* K. A. V. & another.[1]

No. 91-P-963.

Middlesex. December 9, 1992. - April 23, 1993.

Present: ARMSTRONG. BROWN, & LAURENCE, JJ.

Paternity. Practice, Civil, Standing, Appeal from interlocutory order. *Probate Court*, Paternity proceeding.

In a proceeding in the Probate and Family Court, in which the plaintiff sought an adjudication that he was the biological father of two children, the judge's ruling, following a preliminary hearing pursuant to the mandate of *C.C.* v. *A.B.*, 406 Mass. 679, 689-691 (1990), that the putative father had standing to litigate the issues of paternity, custody, and visitation, was an interlocutory decision, not immediately appealable. [372-375]

CIVIL ACTIONS commenced in the Middlesex Division of the Probate and Family Court Department on May 11, 1988.

After review by the Supreme Judicial Court, 406 Mass. 698 (1990), further proceedings were had before *Vincent F. Leahy*, J.

*Ellen L. Nelson* for the defendant.
*Damon Scarano* for the plaintiff.

LAURENCE, J. R.J.A. (the plaintiff), alleging that he was the biological father of two minor children born to the defendant, K.A.V., filed two complaints in the Probate and Family Court against K.A.V. to establish his paternity and to obtain orders relative to custody, visitation and child support. The defendant, asserting that she had been married to another when the children were born, moved to dismiss on the ground, among others, that the plaintiff lacked standing

---

[1]The former spouse of K.A.V., who is not a party to this appeal.

under G. L. c. 209C, § 5(*a*).[2] The plaintiff argued that the statute, which he conceded denied him standing, violates the due process and equal protection clauses of the United States Constitution.

Upon the Probate Court judge's reservation and report of the issue of the plaintiff's standing to the Appeals Court (pursuant to G. L. c. 215, § 13), the Supreme Judicial Court granted the defendant's application for direct appellate review. The court ruled that it did not have to reach any constitutional issues, because G. L. c. 209C, § 5(*a*), did not bar the plaintiff from invoking the "general equity jurisdiction" of the Probate Court and commencing a "common law action" in that court for the adjudication of paternity. *R.J.A.* v. *K.A.V.*, 406 Mass. 698, 699 (1990).

The Supreme Judicial Court denied the defendant's motion to dismiss the complaint for lack of standing under c. 209C and remanded the litigation to the Probate Court for further proceedings in accordance with the principles governing "common law actions" to establish paternity that it had enunciated that same day in its opinion in a similar case, *C.C.* v. *A.B.*, 406 Mass. 679, 689-691 (1990). The portions of that opinion here relevant are as follows:

> "[W]e think that the existence of a substantial relationship between a putative father and the child is an appropriate prerequisite for the commencement of an action such as this . . . . [I]n cases such as this, the Probate Court must hold a preliminary hearing to determine the extent of the relationship between the putative father and the child. This is, in its nature, a fact-based question. The court must look at the relationship as a whole and consider emotional bonds, economic support, custody of the child, the extent of personal association, the commitment of the putative father to attending to the child's needs, the consistency of the putative

---

[2]General Laws c. 209C, § 5(*a*), excludes from the list of persons who may bring a paternity action under c. 209C a man who was not the mother's husband at the time of the child's birth or conception.

father's expressed interest, the child's name, the names listed on the birth certificate, and any other factors which bear on the nature of the alleged parent-child relationship . . . . If the plaintiff cannot come forward with clear and convincing evidence of [a substantial] relationship, he will not be able to proceed beyond the preliminary stages of the action . . . . If, on the other hand, the putative father can demonstrate [at the preliminary hearing] that he has enjoyed a substantial relationship with the child . . . [he] should be given the opportunity to prove paternity." *Id.* at 690-691.[3]

Pursuant to the Supreme Judicial Court's mandate, the Probate Court judge heard evidence over portions of five days on the preliminary issue (as phrased by the judge) "whether [the plaintiff] sustained the burden of proving his contacts with the children were sufficient to allow him to proceed on the issues of paternity [, custody] and visitation."[4] At the conclusion of the hearings, the judge made various findings regarding the relationships of the plaintiff and the defendant and of the plaintiff and the children, on the basis of which he concluded, in an "interlocutory order," that "the ties between [the plaintiff] and the children were close enough to give him standing to litigate the issues of paternity and visitation."[5]

---

[3] In *C.C.* v. *A.B.*, the parties had filed a statement of agreed facts that the court found sufficient to permit the putative father to proceed with his paternity action. 406 Mass. at 689.

[4] The judge stated that he was aware of the relevant Supreme Judicial Court rulings but did not explain why he had couched the issue as being the existence of "sufficient contacts" rather than "a substantial relationship" between father and child.

[5] In the course of explaining his conclusion, the judge declared, somewhat enigmatically, "I am aware of the factors the Supreme Judicial Court said should be considered in these cases. I do not believe that the factors enumerated are exclusive, all-inclusive, or mandatory. I feel the court can look at the entire picture, weigh the evidence, and then make its ultimate finding." Whether the judge, in looking at "the entire picture," erroneously shifted the focus of inquiry away from the relationship between the putative father and the child by stressing the strained relationship between the putative father and the mother, is an issue that must, in

The defendant mother appealed from the judge's order, arguing that the judge ignored or failed to apply the standards for the preliminary hearing set forth in *C.C.* v. *A.B.*, *supra*; made findings not supported by the evidence; erroneously excluded expert evidence necessary to understand the parties' relationship and the plaintiff's conduct at the time of the children's conception; erroneously refused to allow the children (then seven and one-half and six years old) to testify; and consistently manifested an attitude toward her that reflected prejudicial gender bias and sexual stereotypes. We do not address any of these issues,[6] however, because her appeal is a premature one from an interlocutory order and must be dismissed.[7]

It is settled that, in the absence of certain special exceptions not here applicable, an appellate court will reject attempts to obtain piecemeal review of trial rulings that do not represent final dispositions on the merits. See *Pollack* v. *Kelly*, 372 Mass. 469, 470-471 (1977); *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 222 n.2 (1979), cert. denied, 446 U.S. 935 (1980); *La-Londe* v. *LaLonde*, 28 Mass. App. Ct. 969 (1990). This case

---

light of our decision, be addressed, if at all, in the course of any appeal from a final judgment.

[6]It would be difficult in any event on this record to evaluate the defendant's contentions as to the purported deficiencies in the judge's findings, evidentiary rulings and conduct of the proceedings below, because no complete transcript of the hearings has been furnished. "Without a record of the testimony or representations at the hearing, we have no basis for concluding that the evidence did not support the judge's findings. . . . *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 689 (1978). The burden is on the appellant . . . to furnish a record that supports [her] claims on appeal. [*Ibid.*] Errors that are not disclosed by the record afford no basis for reversal." *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 406 (1992).

[7]The fact that the docket sheet lists the probate judge's action which is the subject of the mother's appeal as an "interlocutory order" is not decisive in our determination. The finality and appealability of a decision are measured by its effect on the claims of the parties, not by its label. See *Borman* v. *Borman*, 378 Mass. 775, 779 n.8 (1979). As to the fact that the parties themselves have not raised any question concerning the premature nature of this appeal, see *Doe* v. *Roe*, 19 Mass. App. Ct. 270, 271 (1985), and cases cited.

presents no sound reason to depart from established principle.

The Supreme Judicial Court's mandate in *C.C.* v. *A.B.,* *supra,* that "a preliminary hearing" be held on the substantiality of the putative father's relationship with the child, arose out of and was intended to determine the threshold jurisdictional question of the putative father's standing to maintain a paternity action.[8, 9] Nothing in *C.C.* v. *A.B.* suggests that the Supreme Judicial Court viewed the result of the preliminary hearing on the putative father's standing as a new exception to the final decision rule of appealability.[10] The best interests of the child underlie a paternity proceeding, see *id.,* 406 Mass. at 690, and should be the predominant factor in determining what rights, if any, the father should have. See Gins-

---

[8]A plaintiff's proper standing is a jurisdictional prerequisite to being allowed to press the merits of any legal claim. See *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 202-203 (1957); *Save the Bay, Inc.* v. *Department of Pub. Util.,* 366 Mass. 667, 672 (1975).

[9]The standing issue was presented in *C.C.* v. *A.B., supra,* as it has been in other reported cases, on the mother's motion to dismiss the putative father's complaint (or for summary judgment thereon) for lack of standing. *Id.* at 680. See also *P.B.C.* v. *D.H.,* 396 Mass. 68, 69 (1985); *R.J.A.* v. *K.A.V.,* 406 Mass. at 699; *M.J.C.* v. *D.J.,* 410 Mass. 389, 390 (1991). Procedural objections to a plaintiff's right to sue on the ground that he lacks standing are proper subjects of motions to dismiss or for summary judgment; but the denial of such a challenge to standing is a nonappealable interlocutory decision, in the absence of a proper report by the trial judge pursuant to G. L. c. 231, § 111, or the allowance of leave to appeal by a single justice of this court pursuant to G. L. c. 231, § 118. See *Rollins Envtl. Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 177-180 (1975); *Swift* v. *American Mut. Ins. Co.,* 399 Mass. 373, 375 n.5 (1987); *Curtis* v. *J.J. Duffy Adjustment Serv., Inc.,* 31 Mass. App. Ct. 949, 950 n.3 (1991). See also 5A Wright & Miller, Federal Practice & Procedure §§ 1360, 1372 (2d ed. 1990), and 10 Wright, Miller and Kane, Federal Practice & Procedure § 2715 (2d ed. 1983). Although in this case there was no motion to dismiss before the judge at the time of the preliminary hearing after remand, we think instructive and analogous the treatment of appeals from the denial of such motions raising the issue of standing.

[10]The preliminary standing hearing mandated by *C.C.* v. *A.B.,* 406 Mass. at 690, is procedurally consistent with Mass.R.Civ.P. 12(d), 365 Mass. 756 (1974), which requires that rule 12(b) motions to dismiss "shall be heard and determined before trial," and Rule 9A(c)(3) of the Rules of the Superior Court, which provides for presumptive hearings (when requested) on motions to dismiss and for summary judgment.

berg, *C.C.* v. *A.B.* and Beyond, 35 B.B.J. 11, 12 (1991). We fail to see how so critical a concern would be advanced by creating new opportunities for delay and emotion-driven contentiousness in a proceeding that has a just claim to the utmost expedition at all stages. Cf. *Custody of a Minor*, 389 Mass. 755, 764 n.2 (1983); *Lassiter* v. *Department of Social Servs.*, 452 U.S. 18, 32 (1981).

The judge's order does not fall within any of the established, narrow exceptions to the general prohibition against fragmentary appeals from interlocutory action. It is not subject to the "present execution" doctrine, see *Borman* v. *Borman*, 378 Mass. at 780, for the reason, if no other, that "the doctrine applies only to orders on issues collateral to the controversy . . . ." *Id.* at 782 n.12. See also *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 499 n.12 (1992). The issue addressed at the preliminary hearing required by *C.C.* v. *A.B.*, *supra*, far from being collateral, is inextricably intertwined with the ultimate issues to be decided in the underlying paternity action. "[T]he existence or nonexistence of a substantial relationship between the putative father and child is relevant in evaluating both the rights of the parent and the best interests of the child." *C.C.* v. *A.B.*, 406 Mass. at 690, quoting from *R.R.K.* v. *S.G.P.*, 400 Mass. 12, 21 (1987) (Liacos, J., concurring).

Additionally, the incorrect interlocutory decision of an issue that is so connected to the ongoing merits of the case does the defendant no harm until entry of judgment, since merely causing a party to be subjected to the delay and expense inherent in further litigation does not make such an order "effectively unreviewable" under *Borman* v. *Borman*, 378 Mass. at 780. See *Lauro Lines S.R.L.* v. *Chasser*, 490 U.S. 495, 498-501 (1989). The fact that the defendant mother and the child may, by virtue of the judge's interlocutory order, have to undergo the delay and expense of full litigation on the merits of paternity, including the intrusions of paternity testing, create neither the sort of practically incorrectable present execution recognized by *Borman* and its progeny nor irremediable hardship of the kind that has some-

times been deemed to justify immediate appeal under the analogous "collateral order" doctrine in Federal courts.[11] Moreover, we think that any attendant burden upon the mother and child of submitting to the normal incidents of pretrial and trial (which include discovery by physical examination under Mass.R.Civ.P. 35, 365 Mass. 793-794 [1974]), does not provide a sound basis for application of an exception to the final order rule of appeal. Cf. 9 Moore's Federal Practice § 110.10 (2d ed. 1992); 15A Wright, Miller & Cooper, Federal Practice & Procedure § 3911.4 (2d ed. 1991).

General Laws c. 215, § 9, which provides for an appeal not only from final decisions of a Probate Court but also from any probate judge's "order . . . decree or denial," does not afford relief to the defendant. It is settled that, under this provision, the appeal "should lie dormant . . . until the case has gone to judgment and an appeal from the judgment has been filed." *Mancuso* v. *Mancuso*, 10 Mass. App. Ct. 395, 400-401 (1980).

Finally, we note that the decision in *M.J.C.* v. *D.J.*, 410 Mass. 389 (1991), does not avail the defendant. There, the Supreme Judicial Court allowed a putative father's application for direct appellate review from a probate judge's dismissal of his complaint, following a preliminary hearing pursuant to *C.C.* v. *A.B.*, *supra*, in which the judge found that the plaintiff had not formed a substantial relationship with the child. The appeal in that case was proper, since the judge's order disposed of all outstanding claims.

The defendant's appeal is accordingly dismissed, and the case is remanded to the Probate Court for further proceedings on the plaintiff's complaint.

*So ordered.*

---

[11]Compare, e.g., *Irons* v. *FBI*, 811 F.2d 681, 683-684 (1st Cir. 1987) (order directing Federal Bureau of Investigation to produce documents identifying informants cannot be effectively reviewed after the government has "let the cat out of the bag, without any effective way of recapturing it").