R.F. *vs.* S.D. & another.[1]

No. 00-P-1205.

Suffolk. March 14, 2002. - September 5, 2002.

Present: GREENBERG, LENK, & COWIN, JJ.

*Paternity. Probate Court,* Paternity proceeding. *Evidence,* Paternity, Credibility of witness. *Waiver.*

An action brought by a putative father pursuant to G. L. c. 215, § 6, seeking an adjudication that he was the father of a child whose mother was at the time of birth, and remained, married to another, was properly dismissed on the ground that the putative father failed to demonstrate, preliminarily, the required "substantial parent-child relationship" between himself and the child and had not sought to amend a G. L. c. 209A restraining order that the child's mother had obtained against him so as to permit contact with the child and possibly establish a substantial relationship. [712-714]

This court declined to consider a challenge to the constitutionality of a statutory scheme, where the Attorney General was never notified and given the opportunity to be heard and where, moreover, the plaintiff failed to assert his constitutional claim below. [714]

CIVIL ACTION commenced in the Suffolk Division of the Probate and Family Court Department on September 30, 1998.

A motion to dismiss was heard by *Jeremy A. Stahlin,* J.

*Robert W. Carpenter* for the plaintiff.

*Sandra Mendoza Miller* for the defendants.

GREENBERG, J. Claiming to have sired a child whom the biological mother (one of the defendants) believed was fathered by another, the plaintiff, R.F., brought a complaint under the general equity jurisdiction of the Probate and Family Court, G. L. c. 215, § 6, seeking an adjudication that R.F. was the father. By the time the child was born, the mother, S.D., had married the other defendant, M.D., with whom she had shared

---

[1]M.D., S.D.'s husband.

intimate relations during the same time she had had the affair with R.F.

The plaintiff now appeals from a judgment of the Probate and Family Court dismissing his paternity complaint on the ground that he failed to demonstrate, preliminarily, the required "substantial parent-child relationship" between himself and the child. See *C.C.* v. *A.B.*, 406 Mass. 679, 687 n.8, 689-691 (1990). We affirm.

1. *Background.* We follow the Probate Court's findings, supplemented by details from the record appendix. R.F., a divorced father of five children, met S.D. at a nightclub in April, 1995. Both were unmarried at the time, and a casual friendship ensued. S.D. met her future husband, M.D., later that year and cohabited with him until September, 1997, when they temporarily broke up. Shortly thereafter, S.D. renewed her relationship with R.F., and, by November, 1997, their feelings for each other had intensified. The judge found that R.F. moved into S.D.'s apartment in January, 1998, and that they continued intimate relations until mid-March, 1998. R.F., at that time suspecting that S.D. was dating someone else, threatened to kill her and "pushed her against a wall."

That episode was traumatic. S.D.'s elder daughter was present and upset by R.F.'s behavior. S.D. packed up R.F.'s belongings, placed them on her front porch, and left a message on his pager that the affair was over and that he should have no further contact with her. Over the next several months, through May, 1998, R.F. made several angry telephone calls, in which he raised, among other things, the question of the unborn child's paternity.

From S.D.'s perspective, the final straw occurred on May 5, 1998, when she opened an envelope that R.F. had sent to her elder daughter, which contained a birthday card. Rather than give the card to her daughter, S.D. returned it to R.F. with a note indicating her displeasure and announcing her intention to obtain a restraining order under G. L. c. 209A, which barred R.F. from abusing or contacting S.D. or being present at her residence or workplace. R.F.'s angry telephone calls and his alleged threats to harm her in the event she became involved in another relationship constituted the basis of S.D.'s complaint.

On May 27, 1998, the same judge who would later hear and dismiss the instant paternity case granted S.D. an emergency restraining order under G. L. c. 209A, which barred R.F. from abusing or contacting S.D. or being present at her residence or workplace. One week later, both parties appeared pro se before that same judge for a hearing on S.D.'s restraining order. At this hearing, R.F. denied harassing or abusing S.D. and characterized his telephone calls as efforts to establish a friendship for the sake of the unborn child, whom he thought was his. The judge was not convinced and extended the restraining order until June 4, 1999.

Knowing that S.D. was to give birth in September or October, 1998, R.F. filed the first of two complaints to establish paternity on September 30, 1998. Shortly thereafter, he sought court-approved blood or genetic marker tests. (The child was born on October 13, 1998.) For reasons that do not appear in the record, the first paternity complaint was dismissed without prejudice on January 14, 1999.

The instant complaint was filed on March 1, 1999, and this time, M.D., now married to S.D. (as of July, 1998), was named as a codefendant. On June 4, 1999, S.D. and R.F. appeared, again pro se, before the same judge for hearing on the possibility of extending the original c. 209A order. S.D. affirmed her fear of R.F. For his part, R.F. characterized S.D.'s claims as "nonsense." He indicated that, for the past year, he had stayed away and complied with the c. 209A order. Then, he reminded the judge of the pending paternity proceeding. The judge's response was salutary, as well as a correct statement of the law:

> "Well, let me just explain one thing. The paternity case and this restraining order case are two separate things, and if at any time in the paternity case something that should happen in that case would be prevented by the restraining order, then the judge hearing the paternity case can modify the restraining order to make it possible. So, there's no reason why one ever has to get in the way of the other."

The outcome of this hearing was that the judge extended the restraining order for another year. He explicitly noted, however, that, should R.F. require relief during the course of the paternity

case, "whether it's through visitation or something else that would conflict with th[e restraining order], [he] would be prepared to modify th[e order] after [holding] a hearing on the subject."

In September, 1999, S.D. and M.D. filed a motion to dismiss R.F.'s second paternity complaint, which was heard first at a nonevidentiary hearing in November, 1999. As R.F. had not seen the child in the year since birth, the judge expressed doubt that he could demonstrate the necessary "substantial relationship." *C.C.* v. *A.B.*, 406 Mass. at 690. Even so, the judge ordered both parties to file memoranda on the subject, and set a date for an evidentiary hearing on February 2, 2000.

At the evidentiary hearing, both parties were represented by counsel. S.D. elaborated on the physical mistreatment she had suffered during the short period that she had lived with R.F. The judge found R.F.'s protestations to the contrary "not credible" and ruled that his abusive and threatening actions, not those of S.D., prevented him from forming a substantial relationship with the child. Compare *C.C.* v. *A.B.*, 406 Mass. at 690 n.10; *M.J.C.* v. *D.J.*, 410 Mass. 389, 394 (1991).

On appeal, R.F.'s core argument is that S.D.'s pursuit of the restraining order, the extensions, and her marriage to M.D. prevented him from forming a substantial relationship with the child after S.D. gave birth. As part of this contention, R.F. also asserts that the judge had no evidentiary basis for entering the initial restraining order and the extensions, and that his constitutional rights were infringed.

2. *The prior cases.* In *C.C.* v. *A.B.*, 406 Mass. at 686-687, the Supreme Judicial Court held that, although the mother of the child was married to another man at the time of the child's birth, a putative father could prevail in an action to establish his paternity if he could provide clear and convincing evidence to overcome the presumption that the child was the husband's. With a bow toward protecting the child and the marital family from the "significant intrusion" of a paternity action, *id.* at 691, the court required the putative father to establish first, also by clear and convincing evidence, that a "substantial parent-child relationship" had developed between him and the child. *Id.* at 689-691. The court left unanswered "what rights a putative

father might have in a case where, due to the actions of the mother, he had not yet formed a substantial relationship with the child." *Id.* at 690 n.10.

The lone appellate decision potentially dealing with this exception is *M.J.C.* v. *D.J.*, 410 Mass. 389 (1991). There, the plaintiff putative father brought an action against the mother (his former secretary) and her spouse to establish the plaintiff's paternity of a child born during the mother's marriage to her spouse. *Id.* at 389-390. The defendants moved to dismiss the complaint. *Id.* at 390. Even though the plaintiff established that he had frequently visited the mother and child during the four and one-half months after the child's birth and had financially assisted the mother, *id.* at 391, the Supreme Judicial Court upheld the trial judge's finding that, despite having the opportunity to form a substantial relationship with the child during that time, the plaintiff did not seek to do so because his visits had been prompted by, and were mainly taken up with, his interest in the mother, rather than the child. *Id.* at 393-395. (The plaintiff did not challenge the finding that no substantial relationship was in fact formed. *Id.* at 394.) The plaintiff argued unsuccessfully that the mother's refusal to permit him to see the child beyond the four and one-half months prevented him from forming a substantial relationship that would have allowed further proceedings in the paternity action. *Id.* at 394. In adopting the judge's findings on the plaintiff's opportunity and failure to seek a bond with the child, *id.* at 394-395, the court thus distinguished the facts presented from the situation outlined in *C.C.* v. *A.B.*, 406 Mass. at 690 n.10.

3. *Failure to establish a substantial relationship.* R.F.'s primary argument is that the circumstances described in footnote 10 of *C.C.* v. *A.B.*, *supra*, are present here in that he was prevented from forming the necessary parent-child relationship by S.D.'s pursuit of the restraining order, the extensions, and her subsequent marriage to M.D. Although the argument is somewhat unclear, R.F. also apparently asserts that he was misled by the judge's comments during the June 4, 1999, hearing on the possibility of extending the original restraining order, such that he believed that the order and any potential extensions (which had not yet been granted) would not impede him from

pressing his paternity claim. R.F. also contends that the initial restraining order and the extensions were unsupported by evidence.[2]

We emphasize, first, that the judge validly rejected R.F.'s belated protestations and credited S.D.'s statements about her current concerns and the abuse she had suffered. In particular, the judge stated that "[i]t was only when asked by [the mother's] counsel, in cross examination [at the evidentiary hearing in the paternity case], that [the plaintiff] denied the allegations [of abuse]." This conclusion represents an assessment of credibility by the judge that we are constrained to accept, because it was not clearly erroneous. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). See also *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977); *Adoption of Larry*, 434 Mass. 456, 462 (2001).

Moreover, the judge responded appropriately when R.F.'s counsel first mentioned the outstanding restraining orders at the beginning of the evidentiary hearing in the paternity case. The judge recalled the procedural context differently from the plaintiff, having reviewed transcripts from the restraining order hearings and concluding that the imposition of those orders did not preclude R.F. from requesting relief "that would be available in the paternity case." When counsel disagreed, the judge reminded R.F. that he had clearly advised him at the prior hearings that, if there was a question of visitation that would cause a violation of the c. 209A order, it could be amended to avoid such a violation.

Our review of the transcript, especially the portions we have quoted, convinces us that R.F. failed to take advantage of this invitation. Both the Appeals Court and the Supreme Judicial

[2]R.F. frames this latter attack as an appeal of the validity of these orders. Because R.F. failed to file a timely appeal of the orders, we decline to consider whether the orders were valid. We note, however, that no new incident of abuse is required to extend an order. Under G. L. c. 209A, § 3, as amended by St. 1990, c. 403, § 3, "[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order, of allowing an order to expire or be vacated, or for refusing to issue a new order." The only criterion is a showing of continued need. See *Uttaro* v. *Uttaro*, 54 Mass. App. Ct. 871, 872 (2002); *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 889 (2002).

Court have recognized that allowances may be made for visitation and incidental contact, despite the imposition of a restraining order between two former participants in a relationship. See *Commonwealth* v. *Silva*, 431 Mass. 194, 197-198 (2000); *Commonwealth* v. *Leger*, 52 Mass. App. Ct. 232, 236-238 (2001); *Commonwealth* v. *Stewart*, 52 Mass. App. Ct. 755, 755-757 (2001); *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 491-494 (2002). Thus, the judge recognized that the plaintiff was untimely in not seeking to amend the existing c. 209A order so as to permit contact with the child. Although in the realm of speculation, had R.F. been successful in obtaining temporary visitation, as the judge's discretion would permit, it might have resulted in contact with the child sufficient to establish a substantial relationship. In the unique circumstances of this case, unlike the situation described in footnote 10 of *C.C.* v. *A.B.*, *supra*, the judge left open the opportunity for R.F. to bond with the child.

4. *Alleged constitutional violations.* R.F.'s constitutional contention is that, in addition to S.D.'s pursuit of the initial restraining order and subsequent extensions, the position in which he was placed by virtue of her marriage to M.D. — having to prove a "substantial relationship" and paternity by clear and convincing evidence under the Probate Court's general equity jurisdiction, G. L. c. 215, § 6, rather than under G. L. c. 209C — violated his constitutional rights to due process and equal protection.

We do not reach these issues. Insofar as they question the constitutionality of a statutory scheme, we decline to consider such a challenge where the Attorney General was never notified and given the opportunity to be heard. See *Commonwealth* v. *Rotonda*, 434 Mass. 211, 221 n.17 (2001). See also G. L. c. 231A, § 8; Mass.R.Dom.Rel.P. 24(d) (1975); Mass.R.Civ.P. 24(d), 365 Mass. 769 (1974); *Moakley* v. *Eastwick*, 423 Mass. 52, 53 n.2 (1996). Moreover, the plaintiff did not assert his constitutional claim below. The point is therefore waived. See *NationsBanc Mort. Corp.* v. *Eisenhauer*, 49 Mass. App. Ct. 727, 735 (2000).

We affirm the judgment of the Probate Court.

*So ordered.*