NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13295

J.M.  vs.  C.G. (and two consolidated cases[1]).


Berkshire.      December 7, 2022. - July 19, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Paternity.  Parentage.  Parent and Child, Custody.  Practice,
    Civil, Intervention, Dismissal.  Jurisdiction, Probate
    Court, Paternity proceeding, Equitable.  Probate Court,
    Jurisdiction, Paternity proceeding.  Statute, Construction.
    Due Process of Law, Paternity.  Evidence, Paternity.



Complaint filed in the Berkshire Division of the Probate
and Family Court Department on August 14, 2020.

A motion to intervene was heard by Richard A. Simons, J.

Complaints filed in the Berkshire Division of the Probate
and Family Court Department on January 21 and March 17, 2021.

A hearing on the preliminary showing required to pursue an
adjudication of paternity was had before Richard A. Simons, J.,
and entry of judgments of dismissal were ordered by him.

After consolidation, the Supreme Judicial Court on its own
initiative transferred the cases from the Appeals Court.

---

[1] M.H. vs. C.G. & another; and M.H. vs. C.G.

Buffy D. Lord (Brigid M. Hennessey & Jennifer M. Breen also present) for M.H.

Dennis M. LaRochelle for J.M.

The following submitted briefs for amici curiae:

Christina L. Paradiso & Krista M. Ellis for Community Legal Aid & others.

C. Thomas Brown, Patrick T. Roath, & Sara A. Bellin for Susan Frelich Appleton & others.

Maura Healey, Attorney General, & Helle Sachse, Assistant Attorney General, for the Attorney General.

Patience Crozier & Mary L. Bonauto for GLBTQ Legal Advocates & Defenders.

Anna Richardson for Veterans Legal Services.

BUDD, C.J.  In these cases, M.H., the putative biological father of a child (Amelia),[2] filed suit to establish paternity more than four years after another man, J.M., had executed a voluntary acknowledgement of parentage (VAP).  Because M.H. is time barred from challenging the VAP and is unable to meet the requirements to proceed in equity, we affirm the order of the Probate and Family Court judge denying his motion to intervene in an action brought by J.M., the legal father, against C.G., the mother, seeking legal custody and expanded parenting time, and we also affirm the judgments dismissing two other actions brought by M.H.[3]

---

[2] A pseudonym.

[3] We acknowledge the amicus briefs submitted by Community Legal Aid, Greater Boston Legal Services, Northeast Legal Services, De Novo Center for Justice and Healing, and Massachusetts Law Reform Institute; professors of constitutional and family law; the Attorney General; and GLBTQ Legal Advocates & Defenders; and the amicus letter submitted by Veterans Legal Services.

Statutory framework for establishing parentage. General Laws c. 209C (c. 209C) was enacted to ensure that "[c]hildren born to parents who are not married to each other [receive] the same rights and protections of the law as all other children." G. L. c. 209C, § 1. To that end, the statute provides a mechanism for determining parentage of nonmarital children by way of either a VAP or a court adjudication.[4] G. L. c. 209C, § 2.

A VAP must be executed jointly by the birth parent and a putative parent, notarized, and filed with the registrar of vital records and statistics or the court. G. L. c. 209C, § 11 (a). It is effective as of the date it is signed and has the "same force and effect as a judgment of [parentage]." Id. Importantly, the subsection provides for a one-year statute of repose; that is, any challenge to a VAP must be brought within one year of its being signed. Id. Moreover, challenges are limited to allegations of fraud, duress, or material mistake of fact. Id.

Chapter 209C also allows for parentage to be adjudicated by a judge by way of a bench trial where a plaintiff must establish parentage by clear and convincing evidence. G. L. c. 209C,

---

[4] General Laws c. 209C also provides for court-ordered child support, visitation, and custody rights with respect to such children. G. L. c. 209C, § 2. See Smith v. McDonald, 458 Mass. 540, 544 (2010).

§§ 5 (a), 7, 8.  In addition to a putative parent, others authorized to bring a complaint to establish parentage under c. 209C include the birth mother, the child, a guardian, or the Commonwealth if the child is receiving any type of public assistance.[5]  G. L. c. 209C, § 5 (a).

Where c. 209C is not available as a vehicle for establishing parentage, the Probate and Family Court may do so pursuant to its general equity jurisdiction.  See C.C. v. A.B., 406 Mass. 679, 689-690 (1990).  See also G. L. c. 215, § 6 (granting general equity jurisdiction to Probate and Family Court).  However, as discussed in more detail infra, to proceed under common law where a child's parentage already has been determined, a plaintiff must first demonstrate a substantial relationship between the putative parent and the child.  C.C., supra at 689.

Background and procedural posture.  We recite the facts as found by the Probate and Family Court judge, reserving some details for later discussion.

The mother gave birth to Amelia in February 2013.  At the time she was born, no father was listed on her birth certificate.  The mother and Amelia lived with different people

_____

[5] As discussed further infra, such a complaint may not be brought pursuant to c. 209C if the birth mother is married at the time the child is born and the putative parent is not the mother's spouse.  G. L. c. 209C, § 5 (a).

during the first few months of Amelia's life.  When Amelia was eight months old, she and the mother moved in with J.M., a former boyfriend with whom the mother had been coparenting another child prior to Amelia's birth.  Although J.M. was not Amelia's biological father, he treated her in the same way as he did his biological child.  Even after the mother moved in, months later, with a new partner, J.M. continued to parent Amelia, seeing her nearly every day and taking an active role in her medical care and education.  Approximately three years later, in November 2016, the mother and J.M. agreed to formalize the arrangement by executing a VAP under c. 209C to establish him as Amelia's legal father.

In August 2020, after a disagreement with the mother, J.M. brought an action seeking legal custody and expanded parenting time.[6]  Thereafter, M.H. sought to intervene in the action, alleging that he is Amelia's putative biological father and seeking to "secure his parental rights under the law."

To demonstrate that he had standing to intervene in that action, M.H. filed complaints both in equity and under c. 209C

---

[6] J.M. brought the complaint after his relationship with the mother had become strained, in part, because he had told Amelia that he was not her biological father, after which the mother threatened to reduce his time with Amelia.

to establish his paternity of Amelia.[7]  After a two-day, consolidated evidentiary hearing, the judge dismissed both complaints and denied the motion to intervene.  M.H. timely appealed, and we transferred the consolidated appeal to this court on our own motion.

Discussion.  M.H. maintains that, as Amelia's putative biological father, his c. 209C complaint should have been allowed to proceed notwithstanding the fact that the one-year time limit for challenging the VAP had lapsed.  M.H. further argues that his claim in equity was dismissed improperly because, although one normally must demonstrate a substantial parent-child relationship to move forward with a common-law parentage claim, it is unnecessary for him to do so in the circumstances of this case.

1.  Action to establish parentage under G. L. c. 209C. M.H.'s action pursuant to c. 209C was dismissed because a VAP executed four years prior named another as the legal father. M.H. argues on appeal that the language of G. L. c. 209C, § 5 (a), allows his suit regardless of the preexisting VAP.  In

---

[7] M.H. filed two separate complaints.  He states that, in January 2021, he initially attempted to file a c. 209C complaint but instead filed a complaint in equity at the court's request. Then, in March 2021, he filed a second complaint, under c. 209C. At a status conference later that month, the probate judge indicated that he would rule only on the complaint in equity, having concluded that the VAP precluded M.H. from proceeding pursuant to c. 209C.

the alternative, he argues that the VAP is invalid and that his due process rights were violated because he did not receive notice of the VAP in order to challenge it in a timely manner.

a. <u>Statutory interpretation</u>.  The defendant contends that G. L. c. 209C, § 5 (<u>a</u>), expressly allows him, as the putative biological father, to bring a complaint to establish parentage and that the section specifies that the only circumstance in which the suit would be barred is if the child's birth occurred during the mother's marriage or within 300 days of its termination.  As the mother never has been married, M.H. argues that his c. 209C complaint should have been allowed to go forward notwithstanding the preexisting VAP.

When interpreting a statute, "we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction." <u>DiFiore</u> v. <u>American Airlines, Inc</u>., 454 Mass. 486, 491 (2009), citing <u>Locator Servs. Group, Ltd</u>. v. <u>Treasurer & Receiver Gen</u>., 443 Mass. 837, 859 (2005).  Our ultimate goal is to effectuate the intent of the Legislature.  See <u>Curtatone</u> v. <u>Barstool Sports, Inc</u>., 487 Mass. 655, 658 (2021).

Here, M.H. fails to consider c. 209C in toto.  See <u>Commonwealth</u> v. <u>Fleury</u>, 489 Mass. 421, 429 (2022), quoting <u>Chin</u> v. <u>Merriot</u>, 470 Mass. 527, 532 (2015) ("[a] statute must be interpreted 'as a whole'; it is improper to confine

interpretation to the single section to be construed").  As discussed supra, G. L. c. 209C, § 11 (a), specifies that any "challenge" to a VAP must be brought within "one year" of its execution.  By arguing that his statutory right to pursue a c. 209C complaint under § 5 (a) is not affected by this time limit, M.H. renders it inoperable, thus violating a fundamental rule of statutory interpretation.  See Casa Loma, Inc. v. Alcoholic Beverages Control Comm'n, 377 Mass. 231, 234 (1979) ("It is a common tenet of statutory construction that, wherever possible, no provision of a legislative enactment should be treated as superfluous").

Additionally, M.H.'s narrow reading of the statute nullifies the purpose of VAPs in particular and c. 209C as a whole.  See Adoption of Daphne, 484 Mass. 421, 424 (2020), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006) ("Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense").

As discussed supra, c. 209C is meant to ensure that nonmarital children receive the same rights and protections as those born to parents married to one another.  G. L. c. 209C, § 1.  To that end, § 11 (a)'s one-year cutoff for challenging a

VAP provides stability and permanency with regard to the parentage of nonmarital children.[8]  See Paternity of Cheryl, 434 Mass. 23, 30 (2001), citing G. L. c. 209C, § 11 ("There is a compelling public interest in the finality of paternity judgments").

Without the time limit, parentage established by way of a VAP would be open to challenge indefinitely, depriving the child of the stability that c. 209C is meant to provide.  See C.C., 406 Mass. at 691 ("Without regard to the outcome of a paternity case, even the very trial of such a case might place great strain on a unitary family").  See also Lowery v. Klemm, 446 Mass. 572, 578-579 (2006) ("we will not adopt a construction of a statute that creates 'absurd or unreasonable' consequences" [citation omitted]).

The VAP that establishes J.M. as Amelia's legal father was executed in November 2016.  M.H.'s c. 209C complaint filed in March 2021, then, is over three years too late.[9]

---

[8] In this way, the time limit functions as a statute of repose, which creates a right to be immune from challenge after a certain period of time has elapsed from a specified event. See, e.g., Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 352 (2018) ("A statute of repose eliminates a cause of action at a specified time" and "provid[es] a 'substantive right to be free from liability after a given period of time has elapsed from a defined event'" [citation omitted]).

[9] M.H. also contends that the VAP is binding only on the mother and legal father and therefore cannot be considered res judicata against him.  This argument is misplaced.  M.H. is not

b.  Validity of the VAP.  M.H. additionally argues that because the VAP was signed with the knowledge that J.M. is not Amelia's biological father, it is invalid, implying that the time limit is not applicable.  See D.H. v. R.R., 461 Mass. 756, 763-764 (2012) (where VAP does not become effective as matter of law, there is no time limit on challenges to its validity); Woodward v. Commissioner of Social Servs., 435 Mass. 536, 556 (2002) (VAP invalid where estate of deceased individual executed acknowledgment).  We disagree.

M.H. maintains that "it would be a miscarriage of justice" to treat VAPs executed in the absence of biological ties as equal to those based thereon.  To the contrary, we long have recognized that "families take many different forms" and that thus "a genetic connection between parent and child can no longer be the exclusive basis for imposing the rights or duties of parenthood" (quotation and citation omitted).  Adoption of a Minor, 471 Mass. 373, 378 n.8 (2015).  "Nothing in the language of G. L. c. 209C expressly limits its applicability to parentage claims based on asserted biological ties."  Partanen v. Gallagher, 475 Mass. 632, 638 (2016).  And we specifically have held that an individual may establish parentage under c. 209C

---

precluded from challenging the VAP because the issue has been decided or because he was not a signatory to it.  Rather, his claim fails because he missed the deadline for bringing it.

and execute VAPs without a biological connection to a child.
See id. at 639.

Thus, M.H. is mistaken on the law.  To the extent he
challenges the VAP on the basis of fraud, as explained supra,
his claim is time barred.

c.  Due process claim.  M.H. also maintains that he has
been deprived of "notice and an opportunity to be heard at a
meaningful time and in a meaningful manner."  See Mathews v.
Eldridge, 424 U.S. 319, 333 (1976).  It is true that "fathers of
[nonmarital] children have certain [due process rights] to
maintain a relationship with those children."  C.C., 406 Mass.
at 685, citing Stanley v. Illinois, 405 U.S. 645, 651-652
(1972).  However, claiming that one's due process rights have
been violated does not make it so.

We previously have held that where, as here, a plaintiff
has a cause of action at common law (discussed in more detail
infra), he is not without an opportunity to be heard on his
claim to establish paternity.  C.C., 406 Mass. at 691.  Thus, we
again decline to address the constitutionality of c. 209C.  See
Commonwealth v. Paasche, 391 Mass. 18, 21 (1984) ("We do not
decide constitutional questions unless they must necessarily be
reached").

2.  Common-law action to establish parentage.  As mentioned
supra, where a plaintiff seeks to challenge parentage that

already has been established, the putative parent must proceed under common law pursuant to the court's equity jurisdiction. C.C., 406 Mass. at 682. To do so, he or she must demonstrate a substantial parent-child relationship by clear and convincing evidence. Id. at 689-691.

M.H. argues that the judge improperly applied the substantial parent-child relationship standard to his common-law paternity complaint. In the alternative, M.H. contends that if he is subject to the substantial relationship standard, the judge erred in finding that he failed to sustain his burden. We discern no error.

a. Applicability of the substantial parent-child relationship standard. Where a child's parentage already has been established legally, the substantial relationship test is a necessary balancing test accounting for the fact that a new parentage suit disrupts a family and a child's life and potentially will result in the displacement of one legal parent with another person. See C.C., 406 Mass. at 690-691. See also M.J.C. v. D.J., 410 Mass. 389, 393 (1991) (recognizing "significant intrusion of a full-fledged paternity action"). Where a person alleging to be the biological parent of a child can meet this threshold, however, that "developed parent-child relationship" acquires its own significant protection, and the intrusion on the relationship between the child and the existing

legal parent is "greatly decreased" -- the putative biological parent already having been a significant part of the child's life.  C.C., supra at 691.  In other words, "[t]he existence or nonexistence of a substantial relationship between the putative [parent] and child is relevant in evaluating both the rights of the parent and the best interests of the child."  Id. at 690, quoting R.R.K. v. S.G.P., 400 Mass. 12, 21 (1987) (Liacos, J., concurring).  See R.F. v. S.D., 55 Mass. App. Ct. 708, 711 (2002).

Here, M.H.'s contention that the substantial relationship test should not apply, because the mother and legal father do not live together as a "traditional family unit" and thus have "nothing to protect," is a serious misreading of our case law. Although we previously have discussed the potential disruption to marital families, see, e.g., M.J.C., 410 Mass. at 389; C.C., 406 Mass. at 690; R.F., 55 Mass. App. Ct. at 708-709, the same logic requiring a showing of a substantial parent-child relationship applies equally where a child's parentage has been determined by a VAP, see G. L. c. 209C, § 1; Smith v. McDonald, 458 Mass. 540, 546 (2010) ("the legal equality of nonmarital children pursuant to G. L. c. 209C, § 1, dictates the same rule apply for children in comparable circumstances").  In both cases, "[w]here the putative father can come forward with clear and convincing evidence of a substantial parent-child

relationship, the interest in protecting a family, which by necessary implication has already suffered interference, is greatly decreased." M.J.C., supra at 393.

Although we have recognized "another" important interest in the "traditional" family unit, protecting the best interests of the child is the primary purpose of the substantial parent-child relationship requirement. See C.C., 406 Mass. at 690. A child's interest is served by stable and supportive families of all types. See Partanen, 475 Mass. at 642; Adoption of a Minor, 471 Mass. at 378 n.8; Hunter v. Rose, 463 Mass. 488, 491, 493 (2012) ("a child's welfare is promoted by ensuring that she has two parents to provide, inter alia, financial and emotional support," although parents were separated).[10] By contrast, we have recognized that uncertainty and repetitious litigation over parentage, particularly where a family unit is in place, is not conducive to a child's best interests. See Adoption of Willow, 433 Mass. 636, 647 (2001). Where, as here, Amelia has known J.M. to be her father since she could speak, Amelia spends more than one-half of her time with him, and he has taken an active role in every part of Amelia's life, there undoubtedly is something to protect regardless of the marital status of her

---

[10] The probate judge made direct findings that Amelia "has known [J.M.] as her father" and "has consistently known that [J.M.] is her other caretaking parent," with whom she "spends over half of her time residing."

parents.[11]  The probate judge properly required M.H. to first demonstrate a substantial parent-child relationship before proceeding with his suit.

b.  Application of the substantial parent-child relationship standard.  Finally, M.H. claims that the probate judge erred in concluding that he had not demonstrated a substantial parent-child relationship with Amelia.  As M.H. acknowledges, the existence of a substantial parent-child relationship is a fact-based inquiry.  C.C., 406 Mass. at 690.  "A judge has broad discretion to consider any factor," and "[a]bsent clear error, we will not substitute our weighing of the evidence for that of a trial judge who had the opportunity to observe the witnesses and form conclusions about their credibility."  A.H. v. M.P., 447 Mass. 828, 838 (2006).  See Smith v. Jones, 69 Mass. App. Ct. 400, 404 (2007) ("As in other

---

[11] M.H. also argues that he should not be required to demonstrate a substantial parent-child relationship because the mother in this case prevented him from forming one and "kept [him] in the dark about [Amelia's] paternity until August 2020." See C.C. v. A.B., 406 Mass. 679, 690 n.10 (1990); R.F. v. S.D., 55 Mass. App. Ct. 708, 712 (2002).  This argument is without merit where the probate judge found that M.H. had ample reason to suspect his biological paternity as early as Amelia's conception, the mother updated M.H. as other potential biological fathers were ruled out, and the mother facilitated M.H.'s spending time with Amelia throughout her childhood.  Cf. M.J.C. v. D.J., 410 Mass. 389, 394-395 (1991).  Although M.H. claimed that he did not know he had a right to establish his paternity of Amelia, this lack of knowledge cannot be ascribed to the mother.

contexts where cases center on the best interests of the child, we will not disturb the judge's findings or substitute our judgment for that of the trial judge absent clear error").

Here, after an evidentiary hearing, the judge found that M.H. and Amelia had a relationship that included spending time together at family gatherings and holidays, in addition to M.H.'s having provided occasional transportation or caretaking help. However, the judge also found that M.H. "was not routinely involved in [Amelia's] health, education or welfare" and "did not support her financially or emotionally as a parent does." Thus, notwithstanding the fact that M.H. and Amelia enjoyed a positive and caring relationship, the judge ultimately determined that M.H. failed to demonstrate a substantial parent-child relationship.

On appeal, M.H. does not contest any of the judge's findings. As we see no clear error on the part of the judge, we leave intact his conclusion that M.H. did not meet his preliminary burden to pursue his common-law action to establish parentage.

Conclusion. We affirm the order denying M.H.'s motion to intervene and the judgments dismissing his complaints.

So ordered.