IDA M. FLYNN & another[1] *vs.* THOMAS D. CONNORS, JR.

No. 94-P-417.

Essex. April 11, 1995. - November 6, 1995.

Present: PERRETTA, PORADA, & LAURENCE, JJ.

*Parent and Child*, Support of child born out of wedlock. *Statute*, Construction. *Practice, Criminal*, Support of child born out of wedlock. *Practice, Civil*, Support of child born out of wedlock. *Words*, "A sum for past support."

An action under G. L. c. 209C, inserted by St. 1986, c. 310, § 16, was not the proper vehicle for plaintiffs, a mother and her emancipated child born out of wedlock, to seek to enforce an unpaid order of support entered against the biological father in a pre-1986 proceeding under G. L. c. 273, § 15. [369-372]

CIVIL ACTION commenced in the Lynn Division of the District Court Department on May 21, 1993.

The case was heard by *Brian R. Merrick*, J., on a motion for summary judgment.

*Timothy W. Demakis* for the plaintiffs.

*Raymond Buso* for the defendant.

LAURENCE, J. Dale M. Ragucci was born to Ida M. Flynn on March 16, 1963. It is undisputed that she was also the biological daughter of Thomas D. Connors, Jr. Connors was not then and has never been married to Flynn. On Flynn's complaint, Connors was found guilty in Lynn District Court on January 23, 1965, of abandonment and wilful nonsupport of Ragucci, pursuant to G. L. c. 273, § 15.[2] Connors was

---

[1]Dale M. Ragucci.

[2]A criminal proceeding under G. L. c. 273, § 15, was the only applicable mechanism at the time for enforcing a parent's obligation to support a minor child born out of wedlock. See *Commonwealth* v. *Lobo*, 385 Mass. 436, 447 (1982); *Commonwealth* v. *Chase*, 385 Mass. 461, 462, 469-471 (1982).

given a suspended thirty-day sentence in a house of correction and placed on probation until January 8, 1966. The principal condition of his probation was that he pay child support of $10 a week, through the probation department, during the period of probation.

Connors failed almost entirely to keep up his payments. As of January 8, 1966, he was almost $500 in arrears. During 1966, a series of probation warrants issued, and he defaulted on several occasions. His probation was extended to December 10, 1966; on that date, he still had paid almost nothing and failed to appear in court. Another warrant issued, which remained outstanding until Ragucci contacted the Lynn probation department about the matter in late 1992 or early 1993.[3] A probation revocation hearing followed, after which, on April 5, 1993, a District Court judge found Connors in violation of the January, 1965, probation order. After a continued hearing in the probation revocation proceeding, on June 17, 1993, primarily dealing with Connors's financial ability to pay, the District Court judge revoked Connors's probation and ordered him to pay $4,275 in back child support or serve his original sentence of thirty days in a house of correction. The sentence was stayed pending Connors's appeal to this court.[4]

---

[3]No clear reason emerges from the record for the twenty-six year delay in probation proceedings. Connors appeared in court over thirty times on unrelated criminal matters during that period, and he lived and worked in Lynn virtually the entire time. Flynn seems always to have known of Connors's whereabouts. In an affidavit, she attributed her lack of action to neglect and disinterest on the part of unnamed officials, who allegedly "discouraged" her from taking any steps to make Connors pay. Ragucci reached the age of majority on March 16, 1981, while living on her own, at which time Connors's underlying legal duty of support ended. G. L. c. 209C, § 1; G. L. c. 273, §§ 8, 15.

[4]On June 13, 1995, another panel of this court in a separate appeal reversed the District Court judge's June 17, 1993, ruling and ordered Connors's probation status as established January 23, 1965, terminated. See *Commonwealth* v. *Connors*, 38 Mass. App. Ct. 1127 (1995). The Commonwealth had conceded that the probation revocation proceedings had not been undertaken within a reasonable time. See *Commonwealth* v. *Sawicki*, 369 Mass. 377, 384-385 (1975).

Meanwhile, on May 21, 1993, Flynn and Ragucci had commenced the instant action, demanding "past child support" from Connors under G. L. c. 209C, §§ 5(a) & 9(a),[5] in reliance upon the District Court judge's April 5, 1993, finding of Connors's probation violation.[6] In his answer, Connors admitted the complaint's allegations as to his paternity and the fact of the January 23, 1965, finding and child support order. The plaintiffs thereupon moved, on August 11, 1993, for judgment on the pleadings, asserting that "no material issues of fact remain for adjudication."

Connors countered on September 15, 1993, with a motion for summary judgment. He argued, among other legal points, that he was entitled to judgment because c. 209C, § 9(a), by its terms permits an order for "past support" only in conjunction with the entry of an order for "current support" imposed when a parent remains "chargeable with [the child's]

---

[5]General Laws c. 209C, § 5(a), states in pertinent part: "Complaints under this chapter to establish . . . support . . . of a child may be commenced by the mother . . . [or] by the child . . . ." At the time the complaint was filed, G. L. c. 209C, §9(a), stated in pertinent part: "If the court finds that a parent is chargeable with the support of a child, the court shall make an order . . . requiring a parent to pay . . . current support and maintenance of such child. . . . In addition, the court may order one party to pay the other party . . . a sum for past support . . . ." The second quoted sentence of § 9(a), as to "past support," was eliminated from the statute by St. 1993, c. 460, § 73, effective January 13, 1994. To the extent that § 9(a) gave the plaintiffs a cause of action for "past support" at the time they commenced suit, the 1993 amendment would operate prospectively only and not affect their rights asserted in this action, since nothing in the amendment indicates a legislative intent that it apply retroactively. See Fontaine v. Ebtec Corp., 415 Mass. 309, 318-319 (1993).

[6]In 1986, the General Court revised and "decriminalized" the statutory system governing determinations of paternity and support of children born out of wedlock, particularly in St. 1986, c. 310, § 16, codified as G. L. c. 209C. One of the most significant statutory changes was that proceedings to adjudicate paternity and support could now be by a civil action rather than only by a criminal complaint under G. L. c. 273, with a lesser burden of proof (as to paternity), G. L. c. 209C, § 7, and without jury trial, id., § 12. The termination of the G. L. c. 273 proceeding in Connors's favor (see note 4, supra) does not bar an otherwise proper action brought pursuant to G. L. c. 209C. See G. L. c. 209C, § 22(d); Department of Rev. v. Jarvenpaa, 404 Mass. 177, 182, 184-185 (1989).

. . . support." Since Ragucci was no longer a minor child, he was not (he contended) chargeable with her current support, and could not, therefore, be made to pay "past support" under c. 209C. After a hearing, the same District Court judge who found Connors in violation of the conditions of his probation accepted his interpretation of the statute. The judge ruled that "[a]n order for payment of past support [under G. L. c. 209C, § 9(a)] may be had only 'in addition' to an order for current support" and when "the defendant has a present support obligation." Upon the judge's entry of summary judgment for Connors on November 18, 1993, this appeal followed. We agree with the judge's conclusion and affirm, although we do so for reasons other than the clarity which the judge saw in § 9(a).[7]

Section 9(a) appears to us, far from being clear, multiply ambiguous — not only as to the cardinal operative concept of "a child," but also as to the critical words of the sentence relied on by the plaintiffs, "in addition" and "past support." We will assume in the plaintiffs' favor, without deciding, that an emancipated adult child has standing to sue for support under § 9(a). See Conlon v. Swain, 420 Mass. 735, 737-738 (1995).[8] We will also assume, without deciding, that an order solely for "past support" could in certain circumstances be entered on behalf of a proper party even if not "in addition to" an order for "current support."[9] The plaintiffs' case

---

[7]If the result is legally correct and supported by the undisputed record, we can affirm the lower court's summary judgment on any proper ground, even if we differ with the judge's reasoning. See GTE Prods. Corp. v. Stewart, 421 Mass. 22, 36 (1995).

[8]Flynn, as the unquestioned mother, has standing under the express provisions of G. L. c. 209C, § 5(a); she is arguably the real party in interest here, since the burden of support during Ragucci's minority would have fallen on her as the result of Connors's neglect of his obligations.

[9]See Department of Rev. v. Roe, 29 Mass. App. Ct. 967, 967-968 (1990), holding that G. L. c. 209C, § 9, authorized an order "for retroactive support from the date of [the child's] birth;" and Department of Rev. v. Roe, 31 Mass. App. Ct. 924, 926 (1991), holding that such orders for past support can encompass the time period prior to the 1986 enactment of c. 209C. Although the orders in those cases also required the fathers to pay current support, it is possible to imagine that a child born out of wedlock could commence a c. 209C action on the last day of her minority

founders, however, on the concept of "past support" as used in § 9(*a*). The plaintiffs assume and assert, without benefit of pertinent authority, that it means the sort of amounts at issue: namely, child support obligations pursuant to a preexisting order or judgment that were not paid when due and remain unpaid. Connors, by equally conclusory argument, contends that the language of c. 209C does not authorize enforcement of support orders entered before 1986 under another statute.

Connors's sketchy suggestion contains seeds of merit and points the way to resolution of the issue under our general principles of statutory construction. It is axiomatic that we strive to resolve a statutory ambiguity according to the intent of the Legislature, which is to be "ascertained from all its words construed by the ordinary and approved usage of the language" and by reading the statute "as a whole to produce an internal consistency." *Commonwealth* v. *Fall River Motor Sales, Inc.,* 409 Mass. 302, 316 (1991) (citations omitted). Chapter 209C, § 1, states that it is the purpose of the chapter "to *establish* a means for . . . children [born to parents not married to each other] . . . *to have an order* for their support." Section 2 authorizes "[a]ctions to *establish support obligations.*" Section 5(*a*) deals with "[c]omplaints . . . to *establish . . . support . . . of a child.*" Section 9(*a*) preconditions current support orders on a court finding "that a parent *is chargeable* with the support of a child." (Emphases added.) These several provisions indicate an incipient

---

against a father who has never been subject to a support order. Such a plaintiff would not be entitled to current support but could, under the *Roe* decisions, legitimately assert a claim solely for "past support" back to the date of her birth, at least prior to the 1993 revision of § 9(*a*) (see note 5, *supra*). In light of the remedial purpose of the 1986 legislation (entitled "An Act Improving the Collection of Child Support in the Commonwealth") and its "principal object" and "major focus" — to enforce fathers' support obligations, *Conlon* v. *Swain,* 420 Mass. at 738 — we have little doubt that such a suit would be entertained, at least prior to 1994, even in the absence of a claim for current support. See *O'Connell* v. *Chasdi,* 400 Mass. 686, 694 (1987) (remedial statutes are to be interpreted liberally to accomplish their purposes and extend to cases within the reason, if not the letter, of the statute).

quality to c. 209C enforcement proceedings; the language appears directed to obtaining initial, original support orders in situations where no order previously existed.

The actual wording of § 9(*a*) is even more instructive. It is not just "past support" to which the subsection speaks, but rather "*a sum* for past support" (emphasis added). The use of the indefinite article connotes an unspecified and unascertained amount of money. Such indefiniteness stands in contrast to the sort of "past support" that the plaintiffs seek: fixed, liquidated amounts of money owed and payable at a past time but never paid. There is a recognized word for such precisely known amounts, both in common parlance and in our law: arrearages, or its synonym, arrears. See Webster's Third New Intl. Dictionary 121 (1971); Black's Law Dictionary 109 (6th ed. 1990). Indeed, past support of the type sought by the plaintiffs is explicitly referred to as arrearages (or arrears) not only in our statutes authorizing probate and family court enforcement of child support orders that have not been complied with, see G. L. c. 215, §§ 34 & 34A; but, more pertinently, in the very statutes governing enforcement of child support obligations of fathers of children born out of wedlock founded on either c. 273 or c. 209C. See G. L. c. 273, § 18A(*a*); G. L. c. 119A, §§ 3, 4, 6(*a*) & (*b*), 12(*b*), (*c*), (*d*) & (*e*). (See also G. L. c. 209C, § 18, making G. L. c. 119A applicable for support enforcement orders.)

Additionally, every one of these statutory provisions describing past due and owing support as arrearages or arrears was enacted as part of St. 1986, c. 310 (as §§ 29, 10B, and 16, respectively). This fact provides conclusive reinforcement for the construction of "a sum for past support" in § 16 of c. 310, now G. L. c. 209C, § 9(*a*), as something other than support owed in the sense of previously ordered payments now overdue as unpaid arrearages. See *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981) (provisions of legislation addressing similar subject matter are to be construed together to make a "harmonious whole consistent with legislative purpose"). See also *Beeler* v. *Downey*, 387 Mass. 609,

616 (1982); *Massachusetts Med. Soc.* v. *Commissioner of Ins.*, 402 Mass. 44, 62-63 (1988); *First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 153 (1982) (when Legislature employs specific language in one part of a statute but not in another part that deals with the same topic, the specific language is not to be implied where it is not present).

Viewing "a sum for past support" in the context "of the whole system of which it is but a part," *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 115 (1973), it is evident that the phrase as used in c. 209C was not intended literally to embrace all forms of past support, including arrearages, i.e., fixed sums ordered, overdue, and owing. Rather, it designated only newly awarded amounts never before ordered but established for the first time in an original enforcement proceeding and extending from the date of the child's birth (or other appropriate period), in the sense of the obligations enforced in the two *Roe* cases, *supra*, 29 Mass. App. Ct. at 967-968 and 31 Mass. App. Ct. at 925-926. See *Liability Investigative Fund Effort, Inc.* v. *Medical Malpractice Joint Indemnity Assn. of Mass.*, 409 Mass. 734, 741-742 (1991), cert. denied sub nom. *Liability Investigative Fund Effort, Inc.* v. *Massachusetts*, 115 S. Ct. 666 (1994); *First E. Bank, N.A.* v. *Jones*, 413 Mass. 654, 659-661 (1992) (the literal meaning of a general term in a statute must be limited so as not to include matters that are not fairly within the spirit and intent of the statutory system as a whole).

Sound policy and common sense dictate that a "deadbeat dad" should not be permitted to escape his support obligations for a child he has fathered merely by failing or refusing to pay what he has been ordered to pay until the child reaches majority. We hold only that G. L. c. 209C is not the proper vehicle for enforcing pre-1986 orders of support in an effort to collect amounts owing and unpaid thereunder. We express no opinion on the availability to the plaintiffs of other avenues of relief (see G. L. c. 119A, § 13 [unpaid support orders under c. 273 to be deemed and enforced as judgments] and G. L. c. 273, § 18A, providing for enforcement of

pre-1986 support obligations), nor on the applicable statutes of limitations for c. 209C actions and such other avenues.[10]

*Judgment affirmed.*

---

[10]The parties did not address either of these issues with the reasoned, analytical arguments and citation to relevant legal authorities required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). The plaintiffs' entire argument is that since c. 209C says nothing about a statute of limitations, there is none; Connors's equally conclusory argument is that "it is improbable" that the Legislature intended no temporal limit on c. 209C actions. The statute of limitations issue appears to be a particularly problematic one. Although we have noted that "the six-year statute of limitations, applicable under G. L. c. 277, § 63, to actions under G. L. c. 273, [is not] applicable to civil actions under G. L. c. 209C," *Department of Rev.* v. *Roe,* 29 Mass. App. Ct. at 968, the limitations period that is applicable to such actions (none appearing in c. 209C itself) has never been directly adjudicated. Cf. *Heider* v. *Heider,* 34 Mass. App. Ct. 634, 637 (1993) ("a great passage of time . . . [might] change the nature of the [1988] action [to enforce a 1974 child support order against the father] from one seeking enforcement of [the father's] child support obligation to an action to collect monies owed by [the father] to [the mother]"). Compare also G. L. c. 119A, § 13 (c. 273 orders are effectively judgments, which normally carry a twenty-year statute of limitations, see G. L. c. 260, §§ 2 & 20) with G. L. c. 273, § 18A(*a*) (pre-1986 support orders under c. 273 "shall continue in full force and effect . . . for a period not exceeding six years from" the effective date of the statute in 1986).